F. C. CLEMENTS v. THE SOUTHERN RAILWAY COMPANY AND
WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS.

(Filed 25 February, 1920.)

1. **Summons—Service—Local Agent—Director General—Federal Statutes
   Principal and Agent.**

   Service of summons upon the local agent of a railroad company is
   sufficient on the company, and it is also sufficient upon the Director
   General of Railroads whether the Director General is regarded as holding
   analogous position to that of a receiver or as otherwise in charge of such
   companies under the intent and meaning of ch. 418, sec. 1, of the act of
   Congress of 29 August, 1916, and the proclamation of the President on
   20 December, 1917, made in pursuance thereof.

2. **Same—Nonsuit—Dismissal of Action.**

   The carrier corporation can be sued jointly with the party operating
   its plant, whether the latter is a lessee, receiver, or Director General, and
   when sued jointly it is error to nonsuit the owner company, or to dismiss
   the action as to it.

3. **Appeal and Error—Objections and Exceptions—Motions to Dismiss—
   Actions—Judgments Final.**

   Upon the refusal of a motion to dismiss an action the movant should
   enter his exceptions and appeal from a final adverse judgment, but the
   allowance of the motion is final, permitting the adverse party to appeal.

APPEAL from *Connor, J.,* at August Term, 1919, of WAYNE.

This action was brought by plaintiff against the Southern Railroad
Company, and W. D. Hines, Director General of Railroads, for personal
injuries sustained 20 December, 1918.  The summons was served by
reading and delivering a copy to W. B. Devlin, "the local agent" of the
Southern Railroad Company at Goldsboro, N. C.  That company en-
tered a special appearance before the clerk of the Superior Court, and
moved for the dismissal of the action as to that company on the ground
that W. B. Devlin was not agent of said company because its property
was under the control and management of the Director General, Hines.
The clerk denied the motion, and the company appealed.  At the August
Term, 1919, of Wayne, *Connor, J.,* overruling the action of the clerk,
dismissed the Southern Railroad Company as a party defendant, and the
plaintiff appealed.

*Hood & Hood for plaintiff.*
*J. L. Barham for Southern Railroad Company.*

CLARK, C. J.  The refusal of a motion to dismiss an action is not
appealable, but the defendant should enter his exceptions and appeal
from the final judgment, should it be against him, *Johnson v. Reformers,*
135 N. C., 387, and numerous other cases cited 1 Pell's Rev., 313.

But the allowance of a motion to dismiss is final, and of course appealable.

The plaintiff, while operating, as locomotive fireman, a switching engine of the defendant company, and in obeying the orders of the engineer in charge thereof, and by reason of defective appliances, was severely injured, losing his left leg at the knee joint and his right leg 5 inches above the ankle, incurring great expense and intense mental anguish and physical pain, and being hopelessly injured for life.

Whether the defendant company was then being operated by the Director General as the representative of the lessee or as a statutory receiver, in either event the defendant company was under the control and management of the Director General by authority of law, and was a proper party. *Logan v. R. R.,* 116 N. C., 940, and *Hardin v. R. R.,* 129 N. C., 354.

Service upon the local agent was service upon the Director General, and also upon the company as represented by him. *Hollowell v. R. R.,* 153 N. C., 19; *Grady v. R. R.,* 116 N. C., 952.

The plaintiff could not be deprived of his right of action against the company whose engine he was operating because the road was temporarily, but by lawful authority in the control and management of a lessee, or a receiver. The plaintiff had nothing to do with that matter. The receipts and expenses of the operations will be adjusted between the company and lessee or receiver when the accounts are settled, and the road will now soon be returned to the company in all probability.

Congress by ch. 418, sec. 1, ratified 29 August, 1916, provided: "The President in time of war is empowered . . . to take possession, and assume control of, any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion, as far as may be necessary, of all other traffic, for the transfer or transportation of troops, war material, and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Pursuant to said act, on 20 December, 1917, the President issued a proclamation wherein he recited, "And whereas, it has now become necessary, in the national defense, to take possession and assume control of certain systems of transportation, and to utilize the same, to the exclusion, as far as may be necessary, of other traffic thereon for the transportation of troops, war material, and equipment therefor, and for other needful and desirable purposes connected with the prosecution of the war." He then authorizes the War Department to take possession and assume control of them. The President further provides in said proclamation, "Except with the prior written assent of said Director, no attachment by *mesne* process or on execution shall be levied on or against any other property used by any of said transportation systems in the

conduct of the business as common carrier; but suits may be brought by and against said carrier, and judgments rendered as hitherto, until and except so far as said Director may, by general or special orders, otherwise determine." This was to prevent plaintiffs in such cases being barred by the lapse of time or the death of witnesses.

On 21 March, 1918, Congress passed an act for the operation of transportation systems while under Federal control, sec. 10 of which provides that *"carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers whether arising under State or Federal laws, or at common law,* except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control, or with any order of the President. *Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law, and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government.* Nor shall any such carrier be entitled to have transferred to a Federal Court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because of such Federal control, or of any act of Congress or official order or proclamation relating thereto, shall, upon motion of either party, be transferred to the Court in which it was originally instituted. But no process, *mesne* or final, shall be levied against any property under such Federal control. . . ." U. S. Comp. Stat. (1918), sec. 3115 3/4 J.

In *Hill v. Director General,* at last term, 178 N. C., 609, *Hoke, J.,* said: "The defendant, the Director General, must be considered a party only as being in the management and control of the defendant railroad." This being so, he is simply in effect a statutory receiver, appointed by the President under authority of the act of Congress.

When a receiver is appointed by authority of a State statute, he is simply, in like manner, "to be considered a party only as being in the management and control of the defendant railroad." To the extent and in the cases authorized by the statute the judge places him in the charge of the property of the defendant. In what cases and to what extent the judge shall appoint receivers, and the scope of their powers, varies in different States, and in the same State, according to the statute at different times. There is no magic or peculiar power in his being styled "receiver." The substantial fact is that either by decree of a judge acting by authority of law, as in the case by appointment of the President, acting by authority of an act of Congress, some one is placed "in the management and control of the defendant railroad," in the cases and for the reasons and purposes prescribed in the statute.

The person so acting, whether he is called a receiver, or a Director General, is a party, not individually, but in that representative capacity, and the corporation is sufficiently served with process whether it is served upon a "local agent," or upon the receiver himself, for the "local agent" under our statute, Rev., 440, is designated as a proper party upon whom to make the service.

In the statute above quoted it is provided: "Carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers, whether under State or Federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act, or any other act applicable to such Federal control, or within the order of the President." It would seem, therefore, that the Southern Railroad Company is liable to be sued for the personal injuries sustained by the plaintiff, for under the statute ratified 29 August, 1916, the President issued his proclamation, which provides that no attachment by *mesne* process, or an execution, shall be levied against any property of a railroad, "except with the prior written assent of the Director; but *suits may be brought by and against said carriers and judgments rendered as hitherto,* until and except so far as said Director may, by general and special orders, otherwise determine." As such suits may be brought by and against said carriers, and judgments rendered *as hitherto,* it would seem to follow that service can be made as heretofore upon W. B. Devlin, "local agent," who was and still is "local agent" of the Southern Railway Company at Goldsboro. He is not the less, either in law or fact, filling that position because under the authority of the act of Congress the President has appointed the Director General as a statutory receiver with the most complete powers to "take possession, use, control, or operation of" the Southern Railroad, among others.

There is no question here arising as to the enforcement of the judgment when it shall be obtained, but the Southern Railroad Company is merely served with summons, which will give notice to it as well as to the Director General, that such claim is being prosecuted against the defendant company, which is thus afforded opportunity to contest the claim, and it has appeared in this case, by its counsel.

The sole question presented is whether service can be made upon the Southern Railroad Company while in the hands of the statutory receiver, as could have been done if he had been a receiver appointed by a judge, in such cases as are provided by a Federal or a State statute. If service upon the Director General himself would have been sufficient service upon the corporation as it would be in the case of a receiver, then service upon the station agent under him would be sufficient service under the provision that "suits may be brought by and against said carriers . . . as hitherto." This evidently means in such manner and in such cases as heretofore.

"It was proper to sue the receivers of a railroad company alone, or to join them as defendants with the company in an action for injuries, though the cause of action arose before their appointment." *Hollowell v. R. R.*, 153 N. C., 19.

"Service of a summons upon the receivers of a corporation is service upon the corporation itself as fully as if made upon the president and superintendent, and service upon the local agents of the receivers has the same legal effect as if made upon the receivers personally." *Grady v. R. R.*, 116 N. C., 952.

In *Owens v. Hines, Director General*, 178 N. C., 325, it was held that in an action to recover from the carrier, on any liability (except for fines, forfeitures, and penalties, which must be brought against the carrier alone), the summons must be served upon the Director General, and service on him was sufficiently made by serving the summons upon W. B. Devlin, the "local agent" of the company, but serving under his orders.

While the judgment, if obtained, cannot be collected out of the property of the defendant company, without the prior consent of the Director General, it would be a great hardship upon the plaintiff, suing for grave personal injuries, if he was debarred of an action against the company until it should become out of date or his witnesses should die or remove. It is no hardship upon the defendant company, but to its advantage, that it should be joined as a party defendant and have opportunity to be represented by its own counsel, more conversant probably with the facts than the counsel of the Director General.

The subject has been much illuminated by the following cases in the Federal Courts. In *Johnson v. McAdoo, Director General*, 257 Fed., 757, it is held: "Under act 21 March, 1918, litigants can sue railroad companies under Federal direction, just as they were previously able to do, and in such courts as had jurisdiction under the general law," and further, "It is incumbent on the Director General to defend a suit against a road and make payment in the event of recovery out of his receipts: the question of adjustment as between the Government and the railroad will come up for settlement when the roads shall be returned to their owners or otherwise disposed of." This is exactly in point in this litigation.

In *Jensen v. R. R.*, 255 Fed., 795, it is held that "The provision in General Order No. 50 that pleadings in pending actions for injuries against a railroad company 'may' be amended by substituting the Director General and dismissing the company as defendant must be construed as permissive only, in view of the Federal Control Act, providing that carriers, while under Federal control, shall be subject to all laws and liabilities as common carriers, and that 'actions may be brought

against them and judgments rendered as now provided by law.'" In that opinion the Court says: "Congress clearly meant by the term 'carriers' the corporations themselves, and that the right to sue them must remain certainly until it is changed by some valid provision."

In *Rutherford v. R. R.,* 254 Fed., 880, the Court holds that under the act of 21 March, 1918, ch. 25, sec. 10, the Director General is a carrier, *his position being analogous to a receiver.* There are other decisions, all of them along the above lines.

The above act of 1918, ch. 25, "To provide for the operation of transportation systems while under Federal control for the just compensation of their owners, and for other purposes," authorizes the president "to agree with and to guarantee to any such carrier making operating returns to the Interstate Commerce Commission that during the period of such Federal control it shall receive as just compensation an annual sum, payable from time to time, in reasonable installments for each year, and pro rata for any fractional year of such Federal control not exceeding a sum equivalent as nearly as may be to its average annual railway operating income for the three years ending 30 June, 1917."

There are also other provisions for maintenance, repairs, etc., and for other compensation, and a provision by which the *carrier shall accept the terms and conditions* of this act, which this defendant company, and it is believed that all other railroad companies did.

There are other provisions very much in detail making a most complete lease between the Government and the carriers, including a revolving fund of $500,000,000 placed in the President's hands to provide for deficiencies in receipts. Therefore, the attitude of the parties is that of lessor and lessee, and the defendant company is liable to be sued jointly with the Director General, representing the lessee, as laid down in *Logan v. R. R.,* 116 N. C., 940, and *Harden v. R. R.,* 129 N. C., 354, and citations to those cases in Anno. Ed.

But if the position of the parties was that the Director General is a statutory receiver, as said in *Rutherford v. R. R., supra,* service upon the local agent was equally service upon the corporation and on the Director General under the authorities herein cited.

The order setting aside the service, therefore, because the summons was read to and a copy left with W. B. Devlin, the "local agent" at Goldsboro, instead of upon the Director General himself, must be

Reversed.